IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RAUL ELISS DOMINGUEZ, #1741417 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv122 |
| JEFFERY W. CATOE, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Raul Eliss Dominguez, an inmate currently confined in the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis,* brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred for findings of fact, conclusions of law, and recommendations for the disposition of the lawsuit.

**Procedural history**

Plaintiff began the lawsuit by filing an original complaint on March 11, 2020. He sued Warden Jeffrey W. Catoe, Dr. Gary Wright (deceased), and Physician's Assistant Sondra Sandoval. Plaintiff is raising claims for deliberate indifference to his conditions of confinement and to his serious medical needs. He states that while walking in the hallway at the Coffield Unit on April 30, 2019, a metal window screen fell and hit him in his genital area. His injury has caused him excruciating pain in his genital area and upper right thigh on his right leg. (Dkt. #1, p. 4). Plaintiff is seeking unspecified compensatory and punitive damages as relief for the alleged violations of his Eighth Amendment claims.

On March 13, 2020, the Court ordered the Office of the Attorney General of Texas to file a report addressing Plaintiff's medical claims, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (cited with approval in *Parker v. Carpenter*, 978 F.2d 190, 191-92 (5th Cir. 1992)). (Dkt. #11). The Office of the Attorney General filed the *Martinez* Report on June 11, 2020 (Dkt. #18). Plaintiff filed a response to the Attorney General's *Martinez* Report on April 21, 2021. (Dkt. #33).

## **Plaintiff's Claims**

Plaintiff alleges that on April 30, 2019, he was walking in the hallway of the Coffield Unit, when a metal window screen fell and struck him in the groin area. He claims that the window screen punctured his scrotum. As a result of his injury, Plaintiff has suffered excruciating pain in his genital area and upper right thigh on his right leg. (Dkt. #15, p. 4).

Plaintiff is suing Warden Jeffrey Catoe for deliberate indifference to his conditions of confinement. He specifically asserts that Warden Catoe is in violation for having an unsecured, metal window screen fall, causing serious injury to him, as well as pain.

Plaintiff is suing Dr. Gary Wright (deceased) and Physician' Assistant (PA) Sondra Sandoval for deliberate indifference to his serious medical needs. He states that on July 31, 2019, Dr. Wright intentionally denied him adequate medical treatment by ordering x-rays of his upper right thigh of his right leg rather than ordering x-rays or treatment for his genital area. He believes that Dr. Wright misdiagnosed him as needing a hip replacement and ignored his scrotum injury. (Dkt. #1, p. 6).

He further claims that on October 10, 2019, he was seen by PA Sandoval, through Tele-Med. He asserts that she refused to diagnose or physically examine Plaintiff's injury. He also claims that she failed to refer him to see a physician for his injury.

Plaintiff attached a Step 1 and a Step 2 grievances and investigation documentation for Grievance No. 2019123677 to his complaint. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (holding that a court is limited to a consideration of the well-pleaded allegations of Plaintiff's complaint, including any attachments thereto or documents incorporated by reference therein); *Wright v. Dollar Tree Stores, Inc.*, 2014 WL 11456816 (N.D. Tex. Sept. 16, 2014).

### *Martinez* Report

On June 11, 2020, pursuant to an order of the Court, the Office of the Attorney General of Texas filed a report (Dkt. #18) addressing Plaintiff's medical claims, in accordance with *Martinez*, 570 F.2d at 317. The report includes:

(1) Plaintiff's relevant medical records, with a business records affidavit,

(2) Plaintiff's relevant grievance records, with a business records affidavit,

(3) Plaintiff's Patient Liaison Records, with a business records affidavit,

(4) Plaintiff's relevant UTMB (Hospital Galveston) medical records, with a business records affidavit, and

(5) a sworn affidavit by Dr. Glenda M. Adams, with supporting attachments.

Based upon her review of Plaintiff's various medical records, Dr. Adams opined:

> Based upon my education, training, and experience as a physician in both community and correction settings, I believe that the medical treatment provided to Plaintiff was appropriate and performed within the standard of care. Both Dr. Wright and PA Sandoval have acted conscientiously and professionally based upon the information available to them during their dealings with Plaintiff. Neither Dr.

>Wright nor PA Sandoval have refused or provided inappropriate treatment to Plaintiff at any time.

(Dkt. #18-5, p. 12).

The Court has conducted an independent review of the medical records. Based on the review, the Court finds that the *Martinez* report accurately summarizes the contents of the medical record with respect to Plaintiff.

## Discussion and Analysis

1. <u>Deliberate indifference to conditions of confinement</u>.

Plaintiff asserts that Warden Catoe violated his constitutional rights by having an unsecured, metal window screen fall, and causing serious injury and pain to him. (Dkt. #1, p. 6). Plaintiff does not allege that Warden Catoe knew that the window screen was going to fall or that Warden Catoe had personally taken steps to ensure that the window screen would fall as Plaintiff was walking down the hallway.

Under 42 U.S.C. § 1983, personal involvement in an alleged constitutional violation is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate each defendant's participation in an alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). A civil rights plaintiff cannot simply make generalized allegations or assert legal or constitutional conclusions to satisfy these requirements. The Supreme Court has held that "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Plaintiff has not alleged facts showing that Warden Catoe was personally involved in Plaintiff's claims, other than as his role as the Warden at the Coffield Unit.

A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303–304 (5th Cir. 1987). Examining the issue further, supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Thompkins v. Belt*, at 304 (quotations omitted).

Here, Plaintiff does not claim that Warden Catoe was personally involved or that the warden implemented a policy that caused a constitutional injury. In order to establish a claim for governmental liability under section 1983, a plaintiff must allege and identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of the plaintiff's constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694–95 (1978). Plaintiff has not alleged facts that satisfy this standard. Instead, he has essentially alleged that because Warden Catoe is the Senior Warden of the Coffield Unit, a supervisory role, then *ipso facto*, he must be liable. Plaintiff's attempt to establish Warden Catoe's liability through vicarious liability is unavailing. *See Birdwell v. Livingston*, 327 F. App'x 457, 459–60 (5th Cir. 2009) (no liability in the absence of personal knowledge on the part of officials).

Plaintiff also does not allege any facts to show that Warden Catoe was deliberately indifferent to his conditions of confinement. "To succeed on his conditions-of-confinement claim, a prisoner must show that (1) his confinement, objectively speaking, resulted in a deprivation that was sufficiently serious; and (2) that prison officials acted with deliberate indifference." *See Haralson v. Campuzano*, 356 F. App'x 692, 696 (5th Cir. 2009) (citing *Farmer v. Brennan*, 511

U.S. 825, 834 (1994)); *see also Hernandez v. Velasquez*, 522 F.3d at 556, 560 (5th Cir. 2008) (same). "[T]he deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measures of life's necessities." *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (internal quotation marks and citation omitted).

"[E]xtreme deprivations are required" in order to meet the objective component of a conditions-of-confinement claim. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). In order to satisfy the subjective component, the prisoner must establish that the defendants "acted with deliberate indifference to his conditions of confinement." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (footnote omitted). "To establish deliberate indifference, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1984); *Farmer*, 511 U.S. at 832.

Here, Plaintiff has not alleged any facts that shows that Warden Catoe knew that one of the metal window screens could present an inference of an excessive risk to a prisoner's health or safety. He has also failed to assert facts that Warden Catoe actually drew the inference that such a potential for harm existed from the metal window screens. Plaintiff has failed to allege a claim of deliberate indifference against Warden Catoe.

To the extent that Plaintiff is claiming that Warden Catoe should have known or should have had the maintenance department inspect the screens more frequently to ensure that they are not blown down by the wind, that claim sounds in negligence. Mere negligence does not provide

a basis for a meritorious civil rights lawsuit. *Grogan v. Kumar*, 873 F.3d 273, 278 (5th Cir. 2017); *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015); *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009). A showing of mere negligent indifference is not enough for a constitutional claim. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

Plaintiff has failed to state a claim for deliberate indifference against Warden Catoe. Plaintiff's deliberate indifference claim against Warden Catoe should be dismissed for failure to state a claim upon which relief may be granted.

2. <u>Deliberate indifference to serious medical needs</u>.

Plaintiff is suing Defendants Dr. Wright and PA Sandoval for medical deliberate indifference to his serious medical needs. Plaintiff has failed to state a claim for medical deliberate indifference against either Defendant.

Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright,* 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish an Eighth Amendment violation regarding medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston,* 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (emphasis in original)).

Deliberate indifference "is an 'extremely high' standard to meet." *Brewster v. Dretke,* 587 F.3d 764, 770 (5th Cir. 2009). Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006).

7

Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).

Plaintiff's medical records and Dr. Adams' affidavit provide the following information relevant to Plaintiff's medical claims:

| 04/30/2019 | Security staff escort Plaintiff to the Coffield Unit medical department for completion of an injury report. Plaintiff states 'he was walking, the wind blew the screen on the window, and he walked into it hitting his private parts.' Registered Nurse (RN) Susan Crawford examines Plaintiff's 'private parts' with a chaperone present but finds 'no visible injuries at this time.' Plaintiff is released from the medical department back to security staff. |
|---|---|
| 05/01/2019 | The medical department receives a Sick Call Request (SCR) from Plaintiff requesting 'Follow-up on injury.' Nursing staff schedules him to see a provider (physician, physician assistant, or nurse practitioner). |
| 05/02/2019 | Dr. Jill Coleman sees Plaintiff via Telehealth (video). Plaintiff complains of pain in his penis unrelieved by Tylenol. He denies hematuria (blood in his urine), any abnormality of his urine stream, dysuria (painful urination), and ecchymosis (bruising). Dr. Coleman notes that no abnormalities of Plaintiff's genitalia were found on physical exam at the time of the injury, but since she is unable to perform an adequate exam via video – she requests that he be scheduled for examination by an on-site provider. Dr. Coleman orders Plaintiff ibuprofen/Motrin to be taken twice daily as needed for pain. |

[*Plaintiff is away from the Coffield Unit on June 4, 2019 and June 5, 2019 for an Optometry appointment. He is also away from the Coffield Unit for a period of time on June 25, 2019 while being evaluated at the Palestine Regional Medical Center (PRMC) emergency room for his Bell's palsy. Otherwise, Plaintiff remains at the Coffield Unit but submits no Sick Call Requests (SCR's)*

*and offers no complaints to the medical department about needing further evaluation or treatment for his April 30, 2019 genital injury until July 15, 2019.*]

| 07/01/2019 | Plaintiff is seen for follow-up of his Bell's palsy and penile injury. Nurse Practitioner (NP) Ifeanyie Chukwuka completes a physical examination and discusses his ongoing problems related to Bell's palsy. However, there is no documentation or discussion of Plaintiff's penis pain or of a genital exam. NP Chukwuka orders medications for Plaintiff and advises him to 'put [in a] SCR (Sick Call Request) should the conditions continue to go worse.' |
|---|---|
| 07/15/2019 | Plaintiff submits a SCR complaining that the pain medication he received July 1, 2019 for his April 30th injury is not working. His right leg is still in pain – 'as if the muscles twist causing pain and for me to start limping . . . I strain to climb [stairs] because of pressure on the muscles which hurt.' |
| 07/17/2019 | Plaintiff is seen via the Nursing Protocol for Musculoskeletal Symptoms for his complaint of right leg pain. He states he has had the pain for two weeks and describes the pain as sharp and constant but non-radiating. He is noted to have a limping gait. He is given acetaminophen 325 mg for pain and instructed to take two tablets three times a day as needed for pain. He is scheduled to be seen by a medical provider (physician, physician assistant, or nurse practitioner) for right thigh pain. |
| 07/29/2019 | Dr. Gary Wright sees Plaintiff for right thigh pain which Plaintiff insists is caused by his April 30th accident. Dr. Wright documents Plaintiff's history including the prior fracture of his right femur in 1972. Dr. Wright orders x-rays of Plaintiff's right upper and lower leg, instructs Plaintiff to continue taking Motrin (ibuprofen) for pain, and orders a follow-up visit in three weeks after the x-rays are completed. |
| 07/31/2019 | Dr. Wright reviews and signs the radiologist's report on Plaintiff's right leg x-rays. There is no evidence of soft tissue or acute (recent) bony injury. There are findings of a 'Remote healed distal femoral shaft fracture with residual deformity' and 'Moderate osteoarthrosis of the right hip and knee joints.' |
| 08/20/2019 | Plaintiff submits a Sick Call Request (SCR) requesting follow-up of 'an injury and Bell's palsy that hit me a while back.' |
| 08/21/2019 | Plaintiff is seen via Nursing Protocol for Musculoskeletal Symptoms. He complains of an intermittent 'sharp pain that comes from his groin and goes down his thigh.' On examination Plaintiff is noted to have 'joint stiffness' and decreased range of motion of his right lower extremity with a limping gait. Plaintiff is scheduled to be seen by a medical provider. |
| 09/03/2019 | Dr. Gary Wright sees Plaintiff and documents 'Patient sustained fracture to right lower femur in 1972 and subsequently was struck in upper right leg more recently with substantial discomfort to his right inner hip. Patient had x-rays performed at the Michael Unit and requests to be evaluated by the Hg (Hospital Galveston) Ortho hip personnel to have MRI and surgical correction if available. Not here for Bell's palsy checkup.' Dr. Wright's examination reveals that Plaintiff has FROM (full range of motion) of his right hip but with discomfort in all directions of movement; that the femoral pulse is present; that Plaintiff has right leg length discrepancy (the |

| | |
|---|---|
| | right leg is shortened); and that Plaintiff walks with an altered (abnormal) gait. Dr. Wright reviews Plaintiff's x-ray report from July 31, 2019, which states 'No soft tissue abnormality is seen,' 'Remote healed distal femoral shaft fracture with residual deformity,' and 'Moderate osteoarthrosis of the right hip and knee joints.' Based upon history, examination, and the radiographs, Dr. Wright makes an assessment that Plaintiff is suffering from 'Right hip pain' due to osteoarthritis/degenerative joint disease (OA, DJD). Dr. Wright reviews Plaintiff's medical restrictions and adds 'Limited Standing' and 'Not Suitable for Trustee Camp' to Plaintiff's existing restrictions of lower bunk housing, no bending at the waist, no repetitive squatting, and no walking greater than 400 yards. Dr. Wright also submits a referral for Plaintiff to be evaluated by a UTMB Orthopedic specialist at the TDCJ hospital in Galveston, Texas (Hg Ortho- Hip). |
| 09/20/2019 | Plaintiff submits a Sick Call Request (SCR) inquiring if he is scheduled to go to Galveston. He is informed that he has an appointment in December 2019. |
| 10/15/2019 | Plaintiff submits a SCR seeking 'to get prescription updated.' He requests prescriptions for ibuprofen, non-aspirin (acetaminophen/Tylenol), cold busters (the antihistamine chlorpheniramine), and eye drops. He is scheduled to see a provider. |
| 10/17/2019 | Physician Assistant (PA) Sandra Sandoval sees Plaintiff via Telehealth (video) concerning his request for medication. Plaintiff states he needs ibuprofen for back and leg pain. PA Sandoval reviews Plaintiff's laboratory and x-ray reports and advises him on the possible adverse effects of NSAID's (e.g., ibuprofen). Plaintiff demonstrates understanding but wishes to continue the ibuprofen. PA Sandoval orders the requested prescriptions. She also recommends a DRE (digital rectal exam) and possible referral to urology. |

(Dkt. #18-5, pp. 5-7).

Plaintiff's medical records reflect that unit medical personnel were responsive to his medical needs. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). His medical records reflect that he received medical treatment for his genital, hip, and leg pain. Medical staff saw Plaintiff multiple times after his April 30, 2019 injury. To the extent that Plaintiff disagrees with the treatment or diagnosis prescribed by Dr. Wright or PA Sandoval, his disagreement does not provide a basis for a deliberate indifference claim, absent exceptional circumstances. *Gobert,* 463 F.3d at 346; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Here, the medical records reveal that Plaintiff was examined each time he submitted a sick call request. He was evaluated by nurses and referred to medical providers. The first time that Dr. Wright examined Plaintiff was approximately three months after Plaintiff's initial injury. PA Sandoval first saw Plaintiff approximately six months after his initial injury. There is nothing in the medical records to support a conclusion that Dr. Wright or PA Sandoval refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Overall, the facts as alleged and supplemented by the medical records do not support a claim of deliberate indifference to Plaintiff's serious medical needs by the Defendants.

Here, Plaintiff has not alleged sufficient facts demonstrating that any Defendant violated his Eighth Amendment rights concerning his medical care. Dr. Wright and PA Sandoval have at most misdiagnosed Plaintiff's genital injury and pain as "right hip pain due to osteoarthritis/degenerative joint disease" based on their respective evaluations of his symptoms. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle* 429 U.S. at 106; *Johnson*, 759 F.2d at 1238. Plaintiff's claims against Dr. Wright and PA Sandoval amount to nothing more than negligence, malpractice, or disagreement with treatment, which does

not support a claim of deliberate indifference under section 1983. *See, e.g., Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991) (explaining that "[m]ere negligence, neglect, or medical malpractice" does not give rise to a § 1983 cause of action) (quoting *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir. 1979)).

Plaintiff's claims against Defendants Dr. Wright and PA Sandoval should be dismissed for failure to state a claim upon which relief may be granted. Plaintiff's medical deliberate indifference complaints should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## Recommendation

It is therefore recommended that Plaintiff's complaint be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 9th day of May, 2022.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

12